USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  4/21/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

C.L., by and through his next friend, K.L.; M.P.,          :
by and through her next friend, T.P.; A.C., by and        :
through her next friends, N.F. and R.C.; B.J., by         :
and through her next friend, L.J.; P.S., by and           :
through his next friends, F.N. and C.S.; H.W., by         :
and through her next friend, A.W.; N.W., by and           :
through his next friend, A.W.,                            :
                                                          :
                              Plaintiffs,                 :          14-cv-4422 (NSR)
          -against-                                       :
                                                          :          OPINION & ORDER
HASTINGS-ON-HUDSON UNION FREE                             :
SCHOOL DISTRICT; ROY R. MONTESANO,                        :
SUPERINTENDENT OF SCHOOLS; DEBORAH                        :
AUGARTEN, DIRECTOR OF SPECIAL                             :
EDUCATION SERVICES; HASTINGS-ON-                          :
HUDSON BOARD OF EDUCATION; NEW                            :
YORK STATE EDUCATION DEPARTMENT;                          :
JOHN R. KING, JR., COMMISSIONER OF                        :
EDUCATION,                                                :
                                                          :
                                                          :
                              Defendants.                 :
------------------------------------------------------------X

NELSON S. ROMÁN, United States District Judge:

        Plaintiffs C.L., M.P., A.C., B.J., P.S., H.W., and N.W. ("Plaintiffs"), through their above-

captioned representatives, commenced this action by complaint filed June 18, 2014 (dkt. no. 1)

and amended October 15, 2014 (dkt. no. 13).  The amended complaint (the "Complaint") asserts

causes of action against defendants Hastings-on-Hudson Union Free School District (the

"District"), Roy R. Montesano, Deborah Augarten, and the Hastings-on-Hudson Board of

Education (collectively, the "District Defendants"), and against the New York State Education

Department and John R. King, Jr. (together, the "State Defendants").

Count One asserts a violation of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-82, against the District Defendants and the State Defendants. Count Two asserts a violation of Article 89 of the New York Education Law, N.Y. Educ. L. §§ 4401-4410-c, against the District Defendants. Count Three asserts a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, against the District Defendants and the State Defendants. Count Four asserts a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, against the District Defendants and the State Defendants.

Plaintiffs seek declaratory and injunctive relief on these claims, including a comprehensive assessment of the District's compliance with the IDEA and other special education laws—laws designed to ensure that children who are disabled, as Plaintiffs are, receive appropriate special education and related services—and a corrective action plan to remedy perceived systemic defects in the District's provision of such education.

The District Defendants and the State Defendants both now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. The State Defendants also move to dismiss claims against them pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. For the following reasons, the Court DENIES the Rule 12(b)(1) motions, but GRANTS the State Defendants' Rule 12(b)(6) motion.

## I. COMPLAINT

For purposes of this opinion the Court accepts as true all well-pleaded factual allegations in the Complaint and draws all reasonable inferences in Plaintiffs' favor. The Complaint describes each plaintiff's disability and alleges that Plaintiffs, and others, systematically have

2

been denied access to free appropriate public education that meets developmental needs, in contravention of the IDEA and other statutes. *See* Complaint ("Compl.") ¶ 2. Defendants allegedly have, among other things: "(1) failed to properly classify children who are deemed disabled and eligible to receive special education and related services and made predeterminations with respect to children's classifications; (2) declined to consider opinions of independent evaluators during Committee on Special Education ('CSE') meetings; (3) discouraged meaningful parent, teacher, and service provider participation at CSE meetings; (4) denied the provision of requested services on erroneous grounds or without any basis; (5) failed to provide special education and related services as required by Plaintiffs' respective individualized education programs ('IEPs') and to ensure that these missed special education and related services (herein, 'missed services') are made up within a reasonable period of time; (6) changed special education and related services without first providing parental notification of said changes; (7) provided special education and related services of substandard quality; (8) compelled Plaintiffs to forego educational opportunities to which they were entitled in order to receive special education and related services; and (9) refused to conduct reevaluations upon parental request." *Id.* ¶ 4.

Specific examples of these actions and omissions are given. For instance, one plaintiff repeatedly was denied necessary speech therapy sessions, and another was denied occupational therapy sessions to which she was entitled. *Id.* ¶ 5. Notably, however, the Complaint alleges that particular violations concerning the particular plaintiffs who have commenced the action are the "tip of the iceberg," and that Defendants' actions and omissions also have violated other disabled children's rights "on a broader, systemic basis." *Id.* ¶ 6. Systemic failures purportedly are adversely affecting more than 182 children at this time. *Id.* ¶ 8.

As factual support for the contention that systemic deficiencies are present, and that systemic relief is needed, the Complaint describes an "atmosphere of fear and intimidation" created during defendant Deborah Augarten's tenure as Direct of Special Education Services for the District. *Id.* ¶¶ 6, 40, 47.  The Complaint cites numerous complaints from parents, District staff, and outside specialists regarding Augarten, and a failure by the other District Defendants to address these complaints. *Id.* ¶¶ 7, 43.  The Complaint gives substantial anecdotal evidence of obstructionism and unresponsiveness by Augarten and the District, *id.* ¶¶ 49-57, and cites what arguably is circumstantial evidence of a pervasive problem in the District, including parental survey results showing dissatisfaction, shrinking budgets for special education (not seen in comparable districts), declining enrollment by disabled students (same), and a declining disability classification rate (same), *see id.* ¶¶ 60-66.  The Complaint then describes how systemic problems manifested in the case of each individual plaintiff.  *See id.* ¶¶ 88-143.

In contrast to allegations directed toward the District and the District Defendants, the Complaint largely is silent on the State Defendants' role.  The New York State Education Department (the "SED") allegedly "is responsible for overseeing the provision of public education in New York State," *id.* ¶ 23, and John R. King, Jr. serves as the State Commissioner of Education, *id.* ¶ 24.  The Complaint alleges that at least three complaints were filed with the SED since 2009, at least two of which were adjudicated and decided against Hastings.  *Id.* ¶ 69.  Apparently under State oversight after those adjudications, the District was required to take corrective action pursuant to a "compliance assurance plan."  *Id.*  Allegedly, the plan and the SED focused narrowly on addressing only the complainants' problems, and did not undertake systemic remedial measures, despite one family specifically complaining about the pervasiveness of missed services in the District.  *Id.*  Judging, however, by the Complaint's silence as to other

4

reports to the State of systemic failures, those reports did not happen, but rather, parents voiced their grievances at the District level.  *See, e.g.*, *id.* 70-75 (discussing Hillside Elementary School teachers' memorandum detailing general complaints about systemic problems which was shared with District Superintendent Montesano).  The Complaint nevertheless appears to name the State Defendants (encompassed within "Defendants") on the federal Counts One, Three, and Four, based on the State Defendants' failure to ensure the District's compliance with the IDEA, the Rehabilitation Act, and the ADA.

## II.  MOTION TO DISMISS STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  In assessing whether there is subject matter jurisdiction, the Court must accept as true all material facts alleged in the complaint, *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009), but "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside the pleadings such as affidavits, *Zappia Middle E. Contr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  The Court, again, must take all material factual allegations as true and draw reasonable inferences in the plaintiff's favor, but the

Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.  When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III. DISCUSSION

#### A.  Rule 12(b)(1) Motions

The District Defendants and the State Defendants move to dismiss the three federal claims—the IDEA, Rehabilitation Act, and ADA claims—for lack of subject matter jurisdiction, on grounds that each of the individual plaintiffs failed to exhaust administrative remedies.  All Plaintiffs concede that they did not exhaust those remedies, namely, by requesting a due process review and hearing at the school district level, to address individual grievances.

"It is well-settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court." *J.S. ex rel. N.S. v. Attica Central Schools*, 386 F.3d 107, 110 (2d Cir. 2004).  The process includes review by an impartial due process hearing officer and an appeal from that hearing.  20 U.S.C. § 1415(f), (g).  Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." 20 U.S.C. § 1415(b)(6).  In New York, upon notice of a request to the school district, the local board of education appoints an impartial hearing officer under a rotational selection process.  The hearing officer issues a written decision which can be appealed to a state review officer of the

New York Education Department.  The state review officer's decision is final.  8 N.Y.C.R.R. §
200.5(i), (j).

The exhaustion requirement also applies where plaintiffs seek relief under other federal
statutes when relief also is available under the IDEA.  *Attica Central Schools*, 386 F.3d at 112
(citing 20 U.S.C. § 1415(l)).  Thus, here, the Rule 12(b)(1) motions on the Rehabilitation Act and
ADA claims rise and fall with the motion on the IDEA claim.  *See id.*  This makes good sense, as
an ulterior rule might allow Plaintiffs to circumvent the exhaustion requirement by having
asserted other statutory claims.

Significantly, the IDEA exhaustion requirement is excused when exhaustion would be
futile, which is the case where administrative procedures do not provide an adequate remedy.
*Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 788-91 (2d Cir. 2002).  Plaintiffs bear the
burden of proving such futility, *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*,
288 F.3d 478, 488 n. 8 (2d Cir. 2002), but courts within the Second Circuit have deemed that
burden met and have excused exhaustion where systemic violations are alleged, *Attica Central
Schools*, 386 F.3d at 113 (collecting precedents).  The rationale for so holding is that it is futile to
complete the administrative review process where a hearing can, at most, redress an individual
child's grievance and cannot thereby cure systemic failures.  *Id.*

Having carefully considered the parties' submissions and all arguments therein, this
Court agrees with Plaintiffs' contention that this case falls squarely within the "systemic
failures" exception to the exhaustion requirement.  *Id.* at 113 (the Second Circuit "excuse[s]
exhaustion of administrative remedies in cases that include allegations of systemic violations");
*see also M.H. ex rel. K.H. v. Mt. Vernon City Sch. Dist.*, No. 13-cv-3596, 2014 U.S. Dist. LEXIS
32620, at *6 (Mar. 3, 2014) (S.D.N.Y.) ("allegations of systemic failures render exhaustion futile

[and] the Court excuses plaintiffs' failure to exhaust on that basis").

The Complaint is rife with allegations that systemic, pervasive failures have manifested within the District's special education program. Defendants attempt to frame the case as one implicating only eight individuals whose disabilities and grievances are not monolithic. Indeed the case is not a class action, and Plaintiffs' disabilities and grievances vary. But the Complaint states in multiple places that Plaintiffs' experiences represent an endemic problem within the District.

At this stage of the proceedings, the Court is obligated to accept as true all well-pleaded allegations. Having scrutinized the Complaint, the Court finds the "systemic failures" contention to be supported adequately with factual allegations whose truth must be assumed. Anecdotal descriptions of the atmosphere of intimidation, coercion, and unresponsiveness under Augarten's watch (and largely at her behest) are one example. Adding to those descriptions are allegations of teacher coalition-sponsored memoranda summarizing pervasive problems, adverse budget, enrollment, and classification trends, and survey results demonstrating widespread dissatisfaction. Defendants argue that much of the alleged evidence, in particular, the trends and the survey results, is spurious and can be explained away. But an inference of endemic special education failures is at least equally plausible. There need only be fact-based systemic failure allegations to establish prima facie the futility of exhausting administrative remedies, and the Court sees many in the Complaint.

Accordingly, the Court denies the District Defendants' and the State Defendants' motions to dismiss the IDEA, Rehabilitation Act, and ADA claims for lack of subject matter jurisdiction. The Court likewise denies the District Defendants' Rule 12(b)(1) motion to dismiss Count Two, the New York Education Law claim, over which the Court will continue to exercise

8

supplemental subject matter jurisdiction.

**B.  Rule 12(b)(6) Motion**

For the three claims asserted against the State Defendants, Plaintiffs theory is that those defendants failed adequately to oversee the District and to ensure special education compliance, thus rendering the State potentially liable for District-level failures.  *See, e.g.*, Compl. ¶ 150.  For its part, the IDEA requires State Defendants to ensure that "(i) the requirements of [the statute] are met; and (ii) all educational programs for children with disabilities in the State, including all such programs administered by any other State or local agency (I) are under the general supervision of individuals in the State who are responsible for educational programs for children with disabilities; and (II) meet the educational standards of the State educational agency."  20 U.S.C. § 1412(a)(11)(A).

Plaintiffs therefore correctly note that the State may not abdicate wholesale its oversight duties.  *See Straube v. Fl. Union Free Sch. Dist.*, 801 F. Supp. 1164, 1179 (S.D.N.Y. 1992) ("The State bears ultimate responsibility for ensuring that every child has an appropriate placement . . . is essentially responsible for the actions taken by the local agency.").  Equally true, however, is the State Defendants' assertion that the State has considerable discretion in exercising its supervisory and monitoring authority under the IDEA.  *See A.A. ex rel. J.A. and Franklin Alvarez v. Philips*, 386 F.3d 455, 459 (2d Cir. 2004) (noting the absence of specific guidance within the IDEA on how the State should ensure local compliance).

Dispositive here is the Complaint's near-silence regarding notice provided the State Defendants of the allegedly systemic failures within the District.  Plaintiffs argue that discontent among parents was widespread, and widely voiced, but there are virtually no specific allegations in the Complaint supporting an inference that discontent trickled up to the State.  *See, e.g.*,

9

Compl. ¶ 75 (teacher coalition and parent grievances reported at District level), ¶ 82 (same for group letter from service providers).  Plaintiffs allege "numerous due process complaints and lawsuits" filed, which reflected systemic problems.  But that at most suggests the State was on constructive notice of problems, and Plaintiffs submit no authority supporting the conclusion that constructive notice is sufficient to compel State intervention.

The authorities upon which Plaintiffs rely, rather, demonstrate the Second Circuit's and this Court's focus on *actual* notice provided the State.  *See, e.g.*, *N.Y. State Educ. Dep't.*, 87 Fed. App'x 216, 217 (2004) (noting the absence of record proof that the State received notice of certain IDEA violations, which violations were not documented in a written report the SED did receive, and thus affirming the district court's finding that those violations did not support an IDEA claim against the State); *Mt. Vernon City Sch. Dist.*, 2014 U.S. Dist. LEXIS 32620, at *34-35 ("[W]hen, as here alleged, the SED—which is the state education agency in this case—*has identified* and detailed a district's failures to meet state-imposed targets for performance in special education, courts have found the SED a proper defendant to an action to compel the district's compliance with the IDEA." (emphasis added)).

The sole actual notice upon which Plaintiffs rely is described in a single subparagraph in the Complaint, which asserts that "[a]t least three state complaints were filed with the NYSED since 2009."  Compl. ¶ 69.  Immediately following that assertion, the Complaint concedes that at least two of the three complaints "were adjudicated and decided against Hastings" at the State administrative level.  *Id.*  In other words, for those two complaints, the process worked.  Because of the SED adjudicators' adverse decisions against the District, a compliance assurance plan was put in place.  *Id.*  The Complaint asserts that the plan redressed the individual students' grievances, but did so narrowly and without curing broader systemic failures.  *Id.*  Fatally,

however, the only notice of systemic failures allegedly provided the State was one complainant's statement that, "It became clear to us, from our own experience and from experiences shared by district families, that students frequently miss mandated services in Hastings." *Id.*  This is the sum total of Plaintiffs' assertion that the State Defendants had actual notice of systemic failures within the District, failed to intervene or otherwise compel remedial action, and thus are liable under the IDEA.

Plaintiffs thus, in briefing, place great weight on the one complainant's statement.  But this is an awfully thin reed to stand on, especially when the authorities Plaintiffs cite are unsupportive or distinguishable.  *See N.Y. State Educ. Dep't*, 87 Fed. App'x at 217 (generalized failures within District do not support State liability where not memorialized in a report provided the State); *Mt. Vernon City Sch. Dist.*, 2014 U.S. Dist. LEXIS 32620, at *34-35 (an IDEA claim may proceed against the State because the State had "identified and detailed" the district's systemic failures, and yet had not redressed them).  Further, the State Defendants have cited publicly-available, judicially-noticeable information suggesting the District actually was meeting the federal government's IDEA benchmarks.  Even if that information was inaccurate, the presence of the information in the public domain undercuts the notion that the State was on notice of a systemic problem because of one parent's complaint to that effect.

The Court concludes that the Complaint lacks well-pleaded allegations supporting an inference that the State Defendants were on notice of systemic failures in the District.  Absent such notice, there is no vicarious State liability under the IDEA.  *Beard v. Teska*, 31 F.3d 942, 954 (10th Cir. 1994).  As such, the IDEA claim against the State Defendants does not survive Rule 12(b)(6) scrutiny.

As for the Rehabilitation Act and ADA claims, their requirements are substantially

11

identical to one another,[1] and courts thus "consider these claims in tandem." *Rodriguez v. City of N.Y.*, 197 F.3d 611, 618 (2d Cir. 1999).  Courts routinely dismiss claims brought under Rehabilitation Act Section 504 and the ADA when IDEA claims are dismissed on the same grounds.  *See, e.g.*, *M.K. ex rel. Mrs. K. v. Sergi*, 554 F. Supp. 2d 175, 195 (D. Conn. 2008) (granting State defendants' motion for summary judgment on IDEA, ADA, and Rehabilitation Act Section 504 claims).

The Complaint contains no unique allegations supporting the Rehabilitation Act and ADA claims, but rather, incorporates by reference the breadth of the Complaint and the IDEA allegations.  Compl. ¶¶ 155-60.  Accordingly, the Court finds that the Rehabilitation Act and ADA claims against the State Defendants fail for the same reason the IDEA claim fails against those defendants—absent notice, there is no vicarious State liability.  *See Rodriguez*, 197 F.3d at 619 (the State must adhere to the ADA's and Rehabilitation Act's non-discrimination requirements for services *the State* provides, and safety monitoring is not such a service); *see also R.B. ex rel. L.B. v. Bd. of Educ. of the City of N.Y.*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) ("bad faith or gross misjudgment" required for Rehabilitation Act Section 504 and ADA claims in special education context); *Scaggs v. N.Y. Dep't of Educ.*, No. 06-cv-0799, 2007 U.S. Dist. LEXIS 35860, at *54 (E.D.N.Y. May 16, 2007) ("something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad

---

[1] Rehabilitation Act Section 504 provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal assistance."  29 U.S.C. § 794.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

faith or gross misjudgment").

In sum, the Court grants the State Defendants' Rule 12(b)(6) motion to dismiss the IDEA, Rehabilitation Act, and ADA claims against them on the grounds that the Complaint lacks sufficient allegations regarding State-directed failures, notice of District failures provided the state, or bad faith or gross misjudgment on the State's part.

## IV. CONCLUSION

The Rule 12(b)(1) motions are DENIED in their entirety, but the State Defendants' Rule 12(b)(6) motion is GRANTED in its entirety.  The Clerk of Court is respectfully requested to terminate the motions at docket numbers 15 and 23, and to terminate the State Defendants (i.e., the New York State Education Department and John R. King, Jr., Commissioner of Education) from the action.  The District Defendants are directed to answer the Complaint on or before May 15, 2015.


Dated: April 21, 2015                                  SO ORDERED:
      White Plains, New York

                                            NELSON S. ROMÁN
                                   United States District Judge